IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:23cr103 |
| | ) | **Electronic Filing** |
| ERNEST HARRIS | ) | |

## MEMORANDUM OPINION

On May 23, 2023, a grand jury returned a one-count indictment against Ernest Harris ("defendant") charging him with possession of a firearm after having been convicted of two prior felony offenses. On August 15, 2023, a grand jury returned a superseding indictment charging defendant with the same offense and adding three additional prior predicate felony offenses, thus charging that defendant possessed a firearm after having been convicted of five separate predicate felony offenses. Presently before the court is defendant's motion to dismiss the indictment as barred by the Second Amendment. For the reasons set forth below, the motion will be denied.

The superseding indictment charges defendant at count one with possession of a 9mm Taurus handgun, on or about April 28, 2023, in violation of 18 U.S.C. § 922(g)(1). Defendant seeks dismissal of count one pursuant to the Second Amendment as construed by New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (Jun. 23, 2022), and Range v. Attorney General, 69 F.4th 96 (3d Cir. 2023) (*en banc*). The government opposes the motion.

More specifically, defendant maintains that an "as applied" analysis pursuant to Range renders count one unconstitutional under the Second Amendment because the government has failed to meet its burden to show 1) defendant's prior convictions for receiving stolen property, drug trafficking, unlawful possession of a firearm, terroristic threats and unlawful possession of a firearm are "distinctly similar" to the historical tradition of laws burdening the right of "armed

self-defense" and 2) a comparable justification for the permanent burden that § 922(g)(1) now imposes on citizens like defendant. Because the government cannot "identify any tradition of firearm regulation similar to Section 922(g)(1)'s application to [defendant]," the statute cannot be constitutionally applied to defendant's purported efforts to engage in armed self-defense. Further, "because there is no founding-era history of disarming people convicted of felonies at all, Section 922(g)(1) 'is unconstitutional in all its applications.'" Defendant's Motion to Dismiss (Doc. No. 33) at p.7 (quoting Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449 (2008)). And relatedly, if the boundaries of Section 922(g)(1) must be identified exclusively through "as applied" challenges, the statute is "unconstitutionally vague" because it fails to provide fair notice of its reach and does not supply a reliable way to determine which offenses sufficiently trigger its prohibition. Finally, defendant asserts that the statute violates the Commerce Clause. Each of these grounds is unavailing.

This court finds persuasive the growing consensus of courts rejecting constitutional challenges to Section 922(g)(1) under Bruen. Judge Mariani of the Middle District of Pennsylvania set forth a thorough analysis of the tenants undergirding this consensus in United States v. Minter, 2022 WL 10662252 (M.D. Pa. Oct. 18, 2022), and referenced numerous other decisions reaching the same conclusion. There is no need to improve upon the reasoning in Minter, and that court's analyses are incorporated by reference.

To the extent defendant seeks to advance an as-applied challenge pursuant to Range, his efforts are misplaced. The holding in Range was "a narrow one." Range, 69 F.4th at 106. It was limited to a determination that the government had not met its burden to show "our Republic has a longstanding history and tradition of depriving people like Range of their firearms." Id.

Moreover, defendant overlooks a number of critical aspects of the majority's analysis in Range. In deciding that Range was "one of the people" within the scope of the protections

afforded by the Second Amendment, the majority rejected the contention that Congress lacks the power to strip any citizen of the right to keep and bear arms as defined in Heller and Bruen. To the contrary, the majority agreed with the recognition in Binderup v. Att'y General of the United States, 836 F.3d 336 (3d Cir. 2016) (*en banc*) that while "all people have the right to keep and bear arms . . . , the legislature may constitutionally 'strip certain groups of that right.'" Range, 69 F.4th at 102 (quoting Kanter v. Barr, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, then-judge dissenting) and citing Binderup, 836 F.3d at 344 ("That individuals with Second Amendment rights may nonetheless be denied possession of a firearm is hardly illogical.") (Ambro, J., concurring). Thus, the court stopped short of concluding that the government is unable to show that individuals may be precluded from possessing firearms by operation of Section 922(g)(1).

Furthermore, the majority recognized that it had to "heed" the Supreme Court's repeated references to "law-abiding citizens" in Heller, Bruen and McDonald. It merely expressed its unwillingness to "over read" that phrase as had been done "with Heller's statement that the District of Columbia firearm law would fail under any form of heightened scrutiny." Range, 69 F.4th at 101. The majority only concluded that the referenced phrase did not preclude the court from reaching the issue of whether "Range remain[ed] among 'the people' despite his false statement conviction." Id. at 102. Such a determination falls well short of concluding that the Second Amendment authorizes any citizen to possess a firearm for any reason and/or under any circumstances.

Third, Range involved only a civil declaratory judgment action seeking prospective relief from the application of Section 922(g)(1). The court was not called upon to consider circumstances other than the undisputed proposition that Range wanted injunctive relief to be able to engage in the activity of purchasing a rifle for hunting and a shotgun for self-defense in the home through a law-abiding and responsible process. Id. at 103. Thus, the court was not

called upon to address the procedure and analyses that properly apply when the Second Amendment is used as a shield against serious criminal charges returned by a grand jury that involve the alleged unlawful possession of a firearm.

Finally, the majority in Range considered the government's efforts to analogize Founding-era punishments for criminal offenses to the nature and circumstances of Range's prior criminal history.  Id. at 104-06.  In doing so, it made quite clear that it was only considering and rejecting the government's attempts to prove an analogue to Range's life-time firearms ban for food stamp fraud.  Id. at 105 ("That Founding-era governments disarmed groups they distrusted like Loyalists, Native Americans, Quakers, Catholics, and Blacks *does nothing to prove that Range is part of a similar group today*."); ("Yet the Government's attempts to analogize those early laws *to Range's situation* fall short."); ("So the Government's *attempt to disarm Range* is not 'relevantly similar' to earlier statutes allowing for execution and forfeiture.") (emphasis added).

Foundationally and procedurally, application of Range is limited to civil cases for declaratory relief seeking injunctive suspension of § 922(g)(1) for individuals with a criminal history limited to the offense of food stamp fraud in violation 62 P. S. § 481(a) and/or individuals with criminal histories found to be sufficiently similar.  Such declaratory relief is to be considered on a case-by-case basis.

The above limitations have a direct bearing on defendant's current efforts to invoke the Second Amendment as a shield to count one.  First, while Range did recognize that citizens have the right under Bruen to challenge the prospective application of § 922(g)(1) to their particular circumstances, it continued to recognize that Congress has the power to strip any citizen of the right to keep and bear arms provided it does so in a manner consistent with the individual Second Amendment right defined in Heller and Bruen.  And it refused to disregard the Supreme Court's

4

repeated admonishment that application of the right is and has to date been limited to situations where the individual seeks to gain prospective access to a firearm for a lawful purpose and pursuant to a legitimately established regulatory process.

Defendant does not seek any such form of relief here.  He does not claim to have been convicted of food stamp fraud or even a substantially similar, non-serious offense.  And to the extent he seeks to have this court recognize that his prior convictions for receiving stolen property, drug trafficking, unlawful possession of a firearm, terroristic threats and unlawful possession of a firearm are sufficiently similar in gravity to the single, false statement Range made, the effort is unconvincing.

Moreover, Range does not reflect the facial dismantling of 18 U.S.C. § 922(g)(1).  As noted above, the majority repeatedly emphasized that it was only considering the government's proffered analogues as they related to Range's stated purposes and his criminal history.  And it clearly limited its analysis to Range and his conduct and thereby implicitly eschewed any notion that Heller and Bruen rendered Section 922(g)(1) generally unenforceable.  Judge Ambro wrote separately to underscore this very point.  He posited:

> I write separately, however, to explain why the Government's failure to carry its burden in this case does not spell doom for § 922(g)(1).  It remains "presumptively lawful."  New York State Rifle & Pistol Ass'n, Inc. v. Bruen, ––– U.S. –––, 142 S. Ct. 2111, 2162, 213 L.Ed.2d 387 (2022) (Kavanaugh, J., concurring) (quoting District of Columbia v. Heller, 554 U.S. 570, 626–27, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)).  This is so because it fits within our Nation's history and tradition of disarming those persons who legislatures believed would, if armed, pose a threat to the orderly functioning of society.  That Range does not conceivably pose such a threat says nothing about those who do.  And I join the majority opinion with the understanding that it speaks only to his situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like.

Range, 69 F.4th at 109-20 (Ambro J., concurring).  Judges Greenaway, Jr., and Montgomery-Reeves joined Judge Ambro's concurrence.  Id. at 109.  And like Judge Mariani's analysis in Minter, Judge Ambro noted the repeated cautions of several Justices in Heller and Bruen that felon-in-possession laws are presumptively valid.  Id. at 110.  These concurring judges as well as

5

three dissenting judges agreed that a sufficient history-driven analogue for legislatures disarming those who pose a threat to the orderly and safe functioning of society sufficiently exists. Id. at 113; see also id. at 115 ("No matter how repugnant and unlawful these bans are under contemporary standards, the founders categorically disarmed the members of these groups because the founders viewed them as disloyal to the sovereign. . . . The felon designation similarly serves as a proxy for disloyalty and disrespect for the sovereign and its laws.") (Shwartz, J., Restrepo, J., dissenting) (citations omitted); id. at 128 ("Four centuries of Anglo-American history demonstrate that legislatures repeatedly exercised their discretion to impose 'status-based restrictions' disarming entire 'categories of persons,' who were presumed, based on past conduct, unwilling to obey the law.") (Krause, J., dissenting).

Many of the judges participating in Range emphasized that the determination that Section 922(g)(1) could no longer be enforced against Brian Range was not the equivalent of determining the statute could no longer withstand a facial attack pursuant to the Second Amendment. In this regard, the Supreme Court has held and it has been repeatedly emphasized that a law burdening Second Amendment rights "must have 'a well-established and representative historical analogue, not a historical twin.'" Range, 69 F.4th at 111 (Ambro, J., concurring) (quoting Bruen, 142 S. Ct. at 2133). And given the repeated emphasis by several Supreme Court Justices that felon-in-possession laws remain presumptively lawful, "[a]ny historical inquiry that reaches a contrary result must be wrong in view of the answer the Supreme Court has already supplied." Id.

As Judge Bacharach recently observed in his concurrence in Vincent v. Garland, -- F.4th --, (10th Cir. 2023), searching for historical analogues to the statutory prohibition embodied in Section 922(g)(1) has proven to be an inquiry that "is demanding and subject to differing interpretations." 2023 WL 5988299 at *5 (citing Atkinson v. Garland, 70 F.4th 1018, 1024 (7th

6

Cir. 2023) ("[T]he historical analysis required by Bruen will be difficult and no doubt yield some measure of indeterminacy."); id. at 1025 (Wood, J., dissenting) (stating that Bruen's historical inquiry, with respect to the law prohibiting felons' possession of firearms, "necessarily will be inconclusive").  The significant judicial disagreement over whether the government can establish a sufficient historical analogue for the categorical ban erected by Section 922(g)(1) counsels in favor of a restrained judicial approach and against an unbridled expansion of Bruen into settings that were not before that Court.[1]  Id. at *6.  We agree with Judge Bacharach and conclude that any expansion of Bruen and/or Range beyond their individualized settings properly must await further guidance from the United States Court of Appeals for the Third Circuit and/or the Supreme Court.

Defendant's due process challenge likewise falls short.  "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  United States v. Williams, 553 U.S. 285, 304 (2008) (citing Hill v. Colorado, 530 U.S. 703, 732 (2000) and Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)); accord Interactive Media Entertainment and Gaming Ass'n Inc. v. Attorney General of U.S., 580 F.3d 113, 116 (3d Cir. 2009) (same).  A conviction here will not offend either of these tenants.

---

[1]  Range itself reflects some of these differing interpretations.  In concluding that the government had failed to meet its burden to show the lifetime ban as to Range's conduct was consistent with the nation's historical tradition of firearm regulation, the majority considered both the nature of Range's predicate offense for food stamp fraud under today's views about the severity of such offenses and then considered the nature of Colonial-era offenses and the concomitant duration of any ban on possessing a firearm as part of the then-established punishment.  The concurring and dissenting judges highlighted the nature the Founding-era offenses for which an offender could be disarmed and reasoned that the established authority to disarm for any duration (or to impose greater punishments such as estate forfeiture and death) was sufficient.

Defendant did not seek prospective relief from the application of Section 922(g)(1) based on the nature of his prior convictions and a proposed course of lawful conduct. He thus remains in the category of people banned from possessing a firearm under Section 922(g)(1). After all, with minor exceptions not relevant here, the statute applies to all individuals who have been convicted of a prior felony offense. And "[w]here, as here, a plaintiff raises a facial challenge to a statute on vagueness grounds, the plaintiff 'must demonstrate that the law is impermissibly vague in *all* of its applications.'" Interactive Media Entertainment, 580 F.3d at 116 (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982) (emphasis in original)).

There is no indeterminacy of what fact the government must prove to obtain a conviction under the statute. And the grand jury charged defendant at count one of the superseding indictment with incurring five such prior factual events/offenses. And more to the point, that Brian Range gained prospective relief from Section 922(g)(1) for his particular circumstances did not reduce the application of this straightforward statute into one of subjective assessments or judgments by government officials. Post Range, the elements remain unchanged as does the breadth of the statute. Under these circumstances, defendant's due process challenge for vagueness rings hollow. Cf. Williams, 553 U.S. at 306 ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.").

For all of these reasons, defendant's motion to dismiss count one will be denied. An

appropriate order will follow.[2]

Date: March 26, 2024

                                                 s/David Stewart Cercone
                                                 David Stewart Cercone
                                                 Senior United States District Judge

cc:      Katherine C. Jordan, AUSA
         Michael J. DeRiso, Esquire

         United States Probation Office
         United States Marshal Service

         (*Via CM/ECF Electronic Mail*)

---

[2] Other than referencing Judge Porter's concurrence in Range and raising a challenge for the purpose of preservation, defendant does not support his contention that Congress does not have the authority under the Commerce Clause to promulgate Section 922(g)(1) and there is a lack of precedent for such a position in any event.

9